Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/17/2023 09:05 AM CST

**State of Nebraska, appellee, v.
Jake J. Gonzalez, appellant.**

___ N.W.2d ___

Filed February 17, 2023.    No. S-22-053.

1. **Lesser-Included Offenses.** Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law.
2. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Venue: Appeal and Error.** A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion.
5. ____: ____. A trial court abuses its discretion in denying a motion to change venue when a defendant establishes that local conditions and pretrial publicity make it impossible to secure a fair and impartial jury.
6. **Venue: Proof.** A motion to change venue due to pretrial publicity should be granted only when the moving party demonstrates that it is impossible to secure a fair and impartial jury in the county where the offense was committed.
7. **Criminal Law: Due Process.** Mere exposure to news accounts of a crime does not presumptively deprive a criminal defendant of due process.
8. **Venue: Due Process: Proof.** To warrant a change of venue due to pretrial publicity, a defendant must show pervasive misleading pretrial publicity that makes it impossible to secure a fair trial and impartial jury.
9. **Venue: Proof.** In determining whether a defendant has shown pervasive misleading pretrial publicity, a court generally evaluates a number of factors, including (1) the nature of the publicity, (2) the degree to which the publicity has circulated throughout the community, (3) the degree to

which the publicity circulated in areas to which venue could be changed, (4) the length of time between the dissemination of the publicity complained of and the date of the trial, (5) the care exercised and ease encountered in the selection of the jury, (6) the number of challenges exercised during voir dire, (7) the severity of the offenses charged, and (8) the size of the area from which the venire was drawn.

10. ____: ____. Where voir dire examination shows that despite pretrial publicity a fair and impartial jury can be selected, a defendant seeking to change venue has failed to meet his or her burden to show that a fair and impartial jury is impossible.

11. **Juror Qualifications.** The law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court.

12. **Venue: Juror Qualifications: Proof.** Voir dire examination provides the best opportunity to determine whether the moving party has met his or her burden and venue should be changed.

13. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

14. **Lesser-Included Offenses.** A lesser-included offense is a device that permits a jury to acquit a defendant of a charged offense and instead to convict of a less serious crime that is necessarily committed during the commission of the charged offense.

15. **Lesser-Included Offfenses: Jury Instructions.** Lesser-included offense instructions benefit the defendant because they give the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal.

16. **Due Process: Lesser-Included Offenses: Jury Instructions.** It violates due process to refuse to instruct the jury on a lesser-included offense where such refusal enhances the risk of unwarranted conviction.

17. **Lesser-Included Offenses: Jury Instructions: Evidence.** Lesser-included offense instructions are required in all criminal cases if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

18. **Homicide: Lesser-Included Offenses: Minors.** Involuntary manslaughter is a lesser-included offense of child abuse resulting in death.

19. \_\_\_\_: \_\_\_\_: \_\_\_\_. It would be impossible to commit child abuse resulting in death without committing involuntary manslaughter.

20. \_\_\_\_: \_\_\_\_: \_\_\_\_. The offense of negligent child abuse may constitute the commission of an unlawful act as the predicate offense for involuntary manslaughter.

21. \_\_\_\_: \_\_\_\_: \_\_\_\_. Where a person commits child abuse, either intentionally or negligently, and that abuse results in the death of the child, the person has necessarily committed involuntary manslaughter.

22. \_\_\_\_: \_\_\_\_: \_\_\_\_. Negligent child abuse resulting in death is a lesser-included offense of intentional child abuse resulting in death.

23. \_\_\_\_: \_\_\_\_: \_\_\_\_. The only difference in the elements of intentional and negligent child abuse resulting in death is the state of mind of the defendant in committing the child abuse.

24. \_\_\_\_: \_\_\_\_: \_\_\_\_. A person cannot intentionally abuse a child without also acting negligently in failing to exercise due care toward that child. This applies equally when the child abuse results in death.

25. \_\_\_\_: \_\_\_\_: \_\_\_\_. Where a person's intentional child abuse results in the death of a child, that person has necessarily committed negligent child abuse resulting in death.

26. \_\_\_\_: \_\_\_\_: \_\_\_\_. Involuntary manslaughter is only a lesser-included offense of intentional child abuse resulting in death when negligent child abuse is the predicate crime.

27. \_\_\_\_: \_\_\_\_: \_\_\_\_. When negligent child abuse is the predicate crime, involuntary manslaughter presents the jury with essentially the same questions of fact as negligent child abuse resulting in death.

28. **Convictions: Homicide: Lesser-Included Offenses: Minors: Proof: Words and Phrases.** To obtain a conviction on negligent child abuse resulting in death, the State must prove that the defendant negligently abused a child as defined by Neb. Rev. Stat. § 28-707(1) (Cum. Supp. 2022) and that such abuse resulted in the child's death.

29. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. To obtain a conviction on involuntary manslaughter as a lesser-included offense of intentional child abuse resulting in death, the State must prove that the defendant unintentionally caused a child's death while in the commission of negligent child abuse as defined by Neb. Rev. Stat. § 28-707(1) (Cum. Supp. 2022).

30. **Convictions: Homicide: Lesser-Included Offenses: Minors.** Both involuntary manslaughter and negligent child abuse resulting in death provide the jury with the opportunity to convict of a less serious crime than intentional child abuse resulting in death if it finds the defendant's abusive actions caused a child's death but were unintentional.

31. **Lesser-Included Offenses: Jury Instructions: Appeal and Error.**
Error in failing to instruct the jury on a lesser-included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to the defendant under other properly given instructions.

Appeal from the District Court for Jefferson County: Vicky L. Johnson, Judge. Affirmed.

Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, Siobhan E. Duffy, and Erin E. Tangeman for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

The defendant was convicted by a jury of intentional child abuse resulting in death and making terroristic threats, for which the district court sentenced him to 70 to 80 years' imprisonment and 3 to 3 years' imprisonment, respectively, to be served concurrently. The jury had been instructed on the lesser-included offense of negligent child abuse resulting in death, but not on involuntary manslaughter as he had requested. On direct appeal, the defendant argues that the district court's failure to instruct the jury on a lesser-included offense of manslaughter constituted structural error and deprived him of due process. He also argues that he could not have had a fair and impartial trial in the county where he was tried because many of the prospective jurors admitted to bias and preconceived opinions about the case. We affirm.

## BACKGROUND

In 2020, B.S. was the single mother of two children, M.W. and H.S. B.S. lived with H.S., who was born in 2018. M.W. lived with her father during the week and stayed with B.S.

on weekends. In August 2020, B.S. began a casual sexual relationship with Jake J. Gonzalez. In October, B.S. discovered she was pregnant with Gonzalez' child. In January 2021, Gonzalez began living with B.S. and H.S. at her apartment in Jefferson County.

B.S. testified that Gonzalez was controlling and physically abusive. B.S. developed a safety plan with a friend where she would say "sushi" and the friend would contact law enforcement. She had a similar plan with a worker at a child welfare nonprofit organization, where she would say she "was having a fantastic day or everything was going fantastic" and the worker would get help. B.S. testified that Gonzalez was often irritated with H.S.' crying, would yell at him, and on occasion pushed and threatened him.

On February 26, 2021, while Gonzalez was at work, B.S. and a friend went to the sheriff's office to seek help getting B.S. out of her relationship with Gonzalez. After Gonzalez got home from work, he, B.S. and M.W. picked up H.S. from daycare. B.S. took Gonzalez and H.S. to the apartment because Gonzalez offered to change H.S.' diaper and look after him while B.S. and M.W. went to buy groceries.

B.S. testified that when they returned, she found H.S. lying in bed, undressed down to his diaper and with visible bruising. B.S. tried to move toward H.S., but Gonzalez grabbed her arm and told her not to touch H.S. Gonzalez picked up H.S. by the arm and tried to stand him up, but H.S. could not stand on his own. Gonzalez told B.S. to calm down or else "the same thing would happen to [M.W.]" When B.S. attempted to move toward H.S. again, Gonzalez pushed her back and then dragged H.S. into the bedroom closet and slammed him against the closet wall.

B.S. suggested that she go get a pizza she had left in the car, hoping to seek help outside, but Gonzalez insisted on going with her. While they were briefly separated outside the apartment, B.S. was able to call her mother and tell her to give the safety word to her friend with whom she had established

the safety plan. When they returned to the apartment, B.S. tried to check on H.S. in the bedroom closet, but Gonzalez told her to leave him alone. B.S. then convinced Gonzalez to allow her to make her regular call to the worker at the nonprofit organization, and she used her safety word.

The sheriff's office received a call for dispatch to the apartment. A deputy sheriff was one of the first responders. He called an ambulance and followed B.S. to the bedroom closet where he observed H.S. to be "very distressed," pale, minimally responsive, and unable to pick himself off the floor, as well as with bruising all over his body. The doctor who attempted to treat H.S. at the hospital testified that H.S.' liver was "basically split almost in half," his blood was not circulating, and it was too late for surgery because he was "brain dead." An autopsy determined that the cause of H.S.' death was from lethal damage to the liver from blunt force trauma to the abdomen.

Gonzalez was charged in Jefferson County with child abuse[1] and making terroristic threats.[2] Before a final jury panel had been selected for trial, Gonzalez moved to change venue. He argued that a fair and impartial trial could not be had in Jefferson County because 25 prospective jurors had admitted bias or preformed opinions because of pretrial publicity. The State had acknowledged that there had been a "whirlwind of media and gossip." However, the State responded that the prospective jurors who admitted bias had been struck and argued there were enough remaining jurors who said they could be fair and impartial. The district court agreed with the State and denied the motion because the jury selection process had not finished and there were 40 prospective jurors at that point who said they could be fair and impartial.

The case proceeded to trial. After the close of evidence, the State submitted proposed jury instructions that included

---

[1] See Neb. Rev. Stat. § 28-707 (Cum. Supp. 2022).

[2] See Neb. Rev. Stat. § 28-311.01 (Reissue 2016).

an instruction on negligent child abuse resulting in death as a lesser-included offense of intentional child abuse resulting in death. Gonzalez objected to the State's proposed instructions, requesting that the court also instruct the jury on manslaughter as a lesser-included offense. The State argued that the jury instructions were correct because negligent child abuse resulting in death carries the same penalty as manslaughter and was the "more appropriate" charge. The district court overruled the objection and gave the jury a step instruction on intentional and negligent child abuse resulting in death.

## ASSIGNMENTS OF ERROR

On appeal, Gonzalez assigns that the district court erred by (1) failing to instruct the jury on manslaughter as a lesser-included offense and (2) denying his motion to change venue.

## STANDARD OF REVIEW

[1] Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law.[3]

[2] Whether jury instructions given by a trial court are correct is a question of law.[4]

[3] When reviewing questions of law, we resolve the questions independently of the lower court's conclusions.[5]

[4] A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion.[6]

[5] A trial court abuses its discretion in denying a motion to change venue when a defendant establishes that local conditions and pretrial publicity make it impossible to secure a fair and impartial jury.[7]

---

[3] *State v. Sinica*, 277 Neb. 629, 764 N.W.2d 111 (2009).

[4] *Id.*

[5] *Id.*

[6] *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

[7] *Id.*

## ANALYSIS

Gonzalez argues that due to pretrial publicity, the district court should have granted his motion to change venue. He also argues that the district court was required to instruct the jury on manslaughter as a lesser-included offense of child abuse resulting in death. We hold that the district court did not abuse its discretion by denying Gonzalez' motion to change venue because Gonzalez failed to demonstrate pervasive misleading publicity and the jurors that were ultimately chosen said they could be fair and impartial. We also hold that assuming the district court was required to instruct on manslaughter, its failure to do so was ultimately harmless error because the jury was given the opportunity to determine whether Gonzalez' actions were intentional and found that they were.

### Venue

[6] The district court did not abuse its discretion in denying Gonzalez' motion to change venue because he failed to show pervasive misleading publicity and there were enough jurors who said they could consider the evidence fairly and impartially. Under Nebraska law, all criminal cases "shall be tried in the county where the offense was committed," but if "it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein," then the court "shall transfer the proceeding to any other district or county in the state as determined by the court."[8] A motion to change venue due to pretrial publicity should be granted only when the moving party demonstrates that it is impossible to secure a fair and impartial jury in the county where the offense was committed.[9] Such a motion is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse thereof.[10]

---

[8] Neb. Rev. Stat. § 29-1301 (Cum. Supp. 2022).

[9] See *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999).

[10] *Id*.

[7-9] Mere exposure to news accounts of a crime does not presumptively deprive a criminal defendant of due process.[11] Rather, to warrant a change of venue, a defendant must show pervasive misleading pretrial publicity that makes it impossible to secure a fair trial and impartial jury.[12] In determining whether a defendant has met this burden, we generally evaluate a number of factors, including (1) the nature of the publicity, (2) the degree to which the publicity has circulated throughout the community, (3) the degree to which the publicity circulated in areas to which venue could be changed, (4) the length of time between the dissemination of the publicity complained of and the date of the trial, (5) the care exercised and ease encountered in the selection of the jury, (6) the number of challenges exercised during voir dire, (7) the severity of the offenses charged, and (8) the size of the area from which the venire was drawn.[13]

[10-12] Further, where voir dire examination shows that despite pretrial publicity a fair and impartial jury can be selected, a defendant has failed to meet his or her burden to show that a fair and impartial jury is impossible.[14] The law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court.[15] And voir dire examination provides the best opportunity to determine whether the moving party has met his or her burden and venue should be changed.[16]

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] See *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990). See, also, *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011).

[15] *Bradley, supra* note 14.

[16] See *Erickson, supra* note 14.

Accordingly, we held in *State v. Strohl*[17] that the defendant did not meet his burden to change venue despite significant pretrial publicity and knowledge about the case among the potential jurors.[18] The record showed that 19 of the 29 potential jurors had heard or read something regarding the case. The defendant moved to strike 10 of those potential jurors, and the trial court granted only 3 of those motions.[19] In upholding the trial court's denial of the other seven motions to strike, we noted that each juror either had formed no opinion regarding the defendant's guilt or innocence or could set aside any opinions and decide the case based on evidence.[20] We then upheld the trial court's denial of the defendant's motion to change venue because the jurors said that they could put aside their knowledge and follow the court's instructions, and the news articles offered by the defendant could not show pervasive misleading pretrial publicity because they were purely factual in nature.[21]

Likewise here, the district court did not abuse its discretion in denying Gonzalez' motion to change venue. Gonzalez offered no evidence of news articles or other media publications concerning the case. He offered no evidence on the nature, circulation, or publication date of any pretrial publicity. Instead, he points to the 25 potential jurors who were struck and the State's comment on the "whirlwind of media and gossip." However, assuming there was a "whirlwind of media and gossip," without affidavits or other evidence, Gonzalez failed to meet his burden to establish that the pretrial publicity was pervasive and misleading rather than purely factual. Most importantly, at the end of the voir dire

---

[17] See *Strohl, supra* note 9.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

selection process, a jury was selected of those potential jurors who said they could be fair and impartial. For these reasons, Gonzalez failed to show that it was impossible to secure a fair and impartial jury in Jefferson County and the district court did not abuse its discretion in denying Gonzalez' motion to change venue.

## LESSER-INCLUDED OFFENSE

Gonzalez next argues that the district court erred by refusing to instruct the jury on involuntary manslaughter as a lesser-included offense of intentional child abuse resulting in death. Although we have said that involuntary manslaughter is a lesser-included offense of intentional child abuse resulting in death,[22] in Gonzalez' trial, the jury was instructed on negligent child abuse resulting in death. Under the circumstances presented, we question whether Gonzalez' due process right was violated by failing to instruct the jury on involuntary manslaughter. In any event, because the jury was given the choice between convicting Gonzalez of intentional child abuse resulting in death and the less serious offense of negligent child abuse resulting in death, we hold that any alleged error in refusing to give an involuntary manslaughter instruction was harmless.

[13] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[23] Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law.[24] Whether jury instructions given by a trial court are correct is also a question of

---

[22] See *Sinica, supra* note 3.

[23] *Id.*

[24] *Id.*

law.[25] When reviewing questions of law, we resolve the questions independently of the lower court's conclusions.[26]

[14-16] A lesser-included offense is a "'device that permits a jury to acquit a defendant of a charged offense and instead to convict of a less serious crime that is necessarily committed during the commission of the charged offense.'"[27] The U.S. Supreme Court explained the rationale for requiring instructions on lesser-included offenses in *Beck v. Alabama*.[28] The defendant in *Beck* was tried for the capital offense of "'[r]obbery or attempts thereof when the victim is intentionally killed by the defendant.'"[29] Alabama law at the time precluded the trial court from instructing the jury on the lesser-included offense of felony murder, which was not a capital offense.[30] The Court noted that it had long been recognized that lesser-included offense instructions benefit the defendant because they give the jury "a less drastic alternative than the choice between conviction of the offense charged and acquittal."[31] It explained, "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction."[32] The Court concluded that it violates due process to refuse to instruct the jury on a lesser-included offense where such refusal enhances the risk of unwarranted conviction.[33]

[17] Following *Beck*, we have required lesser-included offense instructions in all criminal cases if (1) the elements

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 634-35, 764 N.W.2d at 116.

[28] *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980).

[29] *Id.*, 447 U.S. at 627.

[30] *Beck, supra* note 28.

[31] *Id.*, 447 U.S. at 633.

[32] *Id.*, 447 U.S. at 634 (emphasis in original).

[33] *Beck, supra* note 28.

of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.[34]

[18-21] We agree with Gonzalez that involuntary manslaughter is a lesser-included offense of child abuse resulting in death. We so held in *State v. Sinica.*[35] It would be impossible to commit child abuse resulting in death without committing involuntary manslaughter.[36] A person commits child abuse if he or she "knowingly, intentionally, or negligently causes or permits a minor child" to be subject to the various harms listed in § 28-707(1)(a) through (f). Child abuse is classified anywhere from a Class I misdemeanor to a Class IB felony depending on the state of mind of the defendant and the result of the abuse.[37] Child abuse that is committed intentionally and knowingly and results in the death of the child is a Class IB felony.[38] Child abuse that is committed negligently and results in the death of the child is a Class IIA felony.[39] A person commits involuntary manslaughter if he or she "causes the death of another unintentionally while in the commission of an unlawful act."[40] Involuntary manslaughter is a Class IIA felony. The offense of negligent child abuse may constitute the "commission of an unlawful act" as the predicate offense for involuntary manslaughter.[41] Thus, where a person

---

[34] *Sinica, supra* note 3.

[35] See *id.*

[36] See *id.*

[37] See § 28-707.

[38] § 28-707(8).

[39] § 28-707(6).

[40] Neb. Rev. Stat. § 28-305(1) (Reissue 2016). See *Sinica, supra* note 3.

[41] See *Sinica, supra* note 3.

commits child abuse, either intentionally or negligently, and that abuse results in the death of the child, the person has necessarily committed involuntary manslaughter.[42]

[22-25] Although involuntary manslaughter is a lesser-included offense of intentional child abuse resulting in death, so is the offense of negligent child abuse resulting in death. The only difference in the elements of intentional and negligent child abuse resulting in death is the state of mind of the defendant in committing the child abuse. In *State v. Parks*,[43] we held that negligent child abuse is a lesser-included offense of intentional child abuse because a person cannot intentionally abuse a child without also acting negligently in failing to exercise due care toward that child. This applies equally where the child abuse results in death. Therefore, where a person's intentional child abuse results in the death of a child, that person has necessarily committed negligent child abuse resulting in death.

[26-28] Gonzalez does not explain how he could have been prejudiced by the trial court's instructing the jury on negligent child abuse resulting in death rather than involuntary manslaughter when, under the facts of this case, there is little, if any, practical difference between the two. Involuntary manslaughter is only a lesser-included offense of intentional child abuse resulting in death when negligent child abuse is the predicate crime. And when negligent child abuse is the predicate crime, involuntary manslaughter presents the jury with essentially the same questions of fact as negligent child abuse resulting in death. To obtain a conviction on negligent child abuse resulting in death, the State must prove that the defendant negligently abused a child as defined by § 28-707(1) and that such abuse resulted in the child's death.

[29,30] To obtain a conviction on involuntary manslaughter as a lesser-included offense of intentional child abuse

---

[42] See *id.*

[43] *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998).

resulting in death, the State must prove that the defendant unintentionally caused a child's death while in the commission of the same negligent child abuse as defined by § 28-707(1). Furthermore, both involuntary manslaughter and negligent child abuse resulting in death carry the same, less serious, punishment than the predicate offense. They are both Class IIA felonies. Therefore, both offenses provide the jury with the opportunity to convict of a less serious crime if it finds the defendant's abusive actions caused a child's death but were unintentional. Under such circumstances, the due process right to give the jury "a less drastic alternative than the choice between conviction of the offense charged and acquittal"[44] and instead to convict of a less serious crime that is necessarily committed during the commission of the charged offense does not appear to have been violated in the first instance.

[31] In any event, Gonzalez was not prejudiced by the court's refusal to give the requested instruction on involuntary manslaughter when the court instructed the jury on the lesser-included offense of negligent child abuse resulting in death. Error in failing to instruct the jury on a lesser-included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to the defendant under other properly given instructions.[45]

We confronted a similar situation in *State v. Huff*[46] and reached a similar conclusion. The defendant in *Huff* was charged with motor vehicle homicide with driving under the influence as the predicate offense, a Class IIA felony. The trial court also instructed the jury on involuntary manslaughter with both driving under the influence and speeding as alternative predicate offenses, Class IIA felonies, but refused to give the defendant's requested instruction on motor vehicle homicide with speeding as the predicate offense, a Class I

---

[44] See *Beck, supra* note 28, 447 U.S. at 633.

[45] *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006).

[46] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

misdemeanor.[47] We indicated that *Beck* did not apply, explaining that the manslaughter instruction gave the jury the opportunity to convict the defendant of the lesser offense if it found that the defendant was not guilty of driving under the influence.[48] We reasoned that *Beck* did not require the motor vehicle homicide instruction because, "considered as a whole," the jury instructions did not confront the jury with the "'all or nothing'" dilemma.[49] However, we ultimately held that because the due process concerns in *Beck* did not apply, the defendant was not prejudiced by the refusal to instruct the jury on a lesser-included offense.[50]

We disagree with Gonzalez' argument that our decision in *Sinica* requires trial courts to instruct on involuntary manslaughter as a lesser-included offense of intentional child abuse resulting in death regardless of other lesser-included offense instructions that have been given.[51] *Sinica* is distinguishable from the present case.

In *Sinica*, the trial court instructed the jury on intentional child abuse resulting in death and negligent child abuse, but refused to give the defendant's additional requested instruction on involuntary manslaughter. We held that the trial court erred by not giving the involuntary manslaughter instruction.[52] However, the defendant in *Sinica* was not charged with negligent child abuse resulting in death as a specific offense because that offense did not exist at the time. Without instructions on negligent child abuse resulting in death or involuntary manslaughter, there was a risk in *Sinica* that a jury could resolve any doubts in favor of convicting on intentional child abuse resulting in death, a Class IB felony,

---

[47] *Id.*

[48] *Id.*

[49] *Id.* at 118, 802 N.W.2d at 108.

[50] *Huff, supra* note 46.

[51] *Sinica, supra* note 3.

[52] *Id.*

rather than convicting on negligent child abuse, a misde-meanor. Therefore, *Sinica* does not directly apply because we did not discuss the situation, presented here, where the jury was instructed on a lesser-included offense that is essentially identical to the requested instruction.

Moreover, we ultimately held in *Sinica* that the trial court's refusal to instruct on involuntary manslaughter was harmless because, by being instructed on both intentional child abuse and negligent child abuse, the jury had the opportunity to consider whether the defendant's actions were intentional.[53] We explained that in rendering a guilty verdict on intentional child abuse rather than negligent child abuse, the jury must have found that the defendant acted intentionally.[54] We con-cluded that the same jury could not have found that he acted without intent if it were given an involuntary manslaugh-ter instruction.[55]

We based our decision in *Sinica* on *State v. Molina*.[56] In *Molina*, the defendant was accused of beating a minor child and was charged with first degree murder and intentional child abuse resulting in death. The trial court did not instruct the jury on the lesser-included offense of negligent child abuse.[57] We noted that in giving a guilty verdict on the murder charge, the jury had to decide that the defendant acted with intent to kill.[58] We reasoned that the same jury "could not have concluded that [the defendant] acted without intent" with respect to the child abuse charge.[59] We concluded that there was no reasonable or plausible basis for finding that the trial

---

[53] Compare *Sinica, supra* note 3, with *State v. Blair*, 272 Neb. 951, 726 N.W.2d 185 (2007).

[54] *Sinica, supra* note 3.

[55] *Id.*

[56] *Molina, supra* note 45.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 521, 713 N.W.2d at 442.

court's refusal to instruct on negligent child abuse was prejudicial to the defendant because the jury necessarily rejected the evidence that would support a finding that the defendant committed only negligent child abuse.[60]

Just as in *Sinica* and *Molina*, the jury here had the opportunity to decide whether Gonzalez acted with intent and found that he did. The district court instructed the jury that the elements of intentional child abuse resulting in death included that Gonzalez acted knowingly and intentionally. It then instructed the jury to convict Gonzalez of intentional child abuse resulting in death only if the jury found that the State had proved all of the elements beyond a reasonable doubt, and to only proceed to consider negligent child abuse if the jury found that the State failed to do so.

Under these instructions, when the jury found Gonzalez guilty of intentional child abuse resulting in death, it necessarily found that Gonzalez acted knowingly and intentionally and rejected a finding that he acted only negligently. The same jury could not have found that he acted only negligently in committing child abuse as the predicate crime for the lesser offense of involuntary manslaughter. Therefore, the district court's refusal to instruct on involuntary manslaughter was not reversible error because it could not have prejudiced Gonzalez.

## CONCLUSION

The district court did not err in denying Gonzalez' motion for change of venue. Additionally, any error in refusing to instruct the jury on involuntary manslaughter was harmless.

Affirmed.

---

[60] Compare *Molina, supra* note 45, with *Blair, supra* note 53.