IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. FALCON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHAQUILLE M. FALCON, APPELLANT.

Filed June 17, 2025.    No. A-24-761.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Timothy P. Sullivan, of Sullivan Law, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Shaquille M. Falcon appeals from his conviction in the district court for Lancaster County for second degree assault. On appeal, he assigns errors related to the failure to give a lesser-included offense jury instruction, the sufficiency of the evidence to support his conviction, and the sentence imposed by the court. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On February 22, 2023, the State filed an information in the district court, charging Falcon with second degree assault, a Class IIA felony, in violation of Neb. Rev. Stat. § 28-309 (Reissue 2016). The State alleged that on December 8, 2022, Falcon unlawfully struck or wounded Stacey Vanarsdale while legally confined in jail or an adult correctional or penal institution. The State subsequently filed an amended information, correcting the date of the alleged incident to December 7.

- 1 -

A jury trial was held on June 13 and 14, 2023. The State presented testimony from a police officer and a correctional officer. The State also offered a video of the December 7, 2022, incident and photographs of Falcon and Vanarsdale taken the following day, which were received by the district court.

Brent Wrinkle, a Lancaster County Corrections sergeant, testified about the layout of the Lancaster County jail, certain procedures for inmates, and his investigation of the incident in question. Wrinkle explained that inmates are locked down in their cells at certain times; at other times, they can spend time outside of their cells in the "day room." The jail is divided into housing units, referred to as "pods," with an officer assigned to each pod. The officer sits behind a desk where inmates can approach and ask questions. Approximately every 30 minutes, the officer walks around the pod to "make sure everything is the way it should be." Wrinkle explained that during their "out time," inmates are allowed to come and go from their cells. The officers are supposed to open the cell door each time an inmate wants to leave their cell and then close the door, but officers do not always enforce the rule or check that the doors are closed. According to Wrinkle, some inmates will "make it look like their door is shut."

Inmates receive a rule handbook and a disciplinary manual when they arrive at the jail, and they are subject to internal discipline and possible further criminal charges for violations of those rules. The handbook provides that inmates are not allowed in cells not assigned to them, and no fighting is allowed. Wrinkle testified that disagreements commonly occur between inmates for a variety of reasons. He testified further that inmates rarely approach correctional officers about these disputes. More often, they will resolve issues among themselves by talking or with physical altercations, which are sometimes prearranged.

According to Wrinkle, inmates know where the surveillance cameras are located in the pod and take steps to avoid them during prearranged fights. There are no cameras in the cells or in the showers. The video from the cameras in the pods does not include sound. Wrinkle has observed inmates prepare for prearranged fights by taking off their shirts so the other inmate does not have something to grab onto, wearing "normal shoes" instead of "shower shoes" so they do not slip, or covering a cell window or notifying other inmates of the fight so the other inmates can block the fight from view or distract the officer in the pod with conversation.

At the time of the December 2022 incident, Falcon and Vanarsdale were housed in "N pod," the maximum-security unit, in cells N14 and N16, respectively. Both cells are on the bottom level of the unit. On December 8, Wrinkle returned to work after a day off. Upon reviewing some anonymous inmate request forms or "kites," Wrinkle learned that an incident had occurred the day before. The information on the kites led Wrinkle to watch the N pod surveillance video from December 7, which showed a fight between Falcon and Vanarsdale.

Near the beginning of the surveillance video, Falcon takes off his shirt. Falcon and Vanarsdale then go into a cell, which Wrinkle identified as Falcon's cell. Falcon puts something up to cover the window, which falls down a few seconds later. Then through the small cell window, the video shows Falcon and Vanarsdale swinging their arms at each other. The video also shows another inmate standing directly in front of the cell window after the window covering falls, as well as other inmates around the officer's desk, appearing to engage him in conversation. The video then shows Falcon returning to the day room and putting his shirt back on and Vanarsdale entering his own cell.

After watching the surveillance video, Wrinkle interviewed Falcon and Vanarsdale, separately. Wrinkle did not observe any injuries on Falcon; he observed some redness, bruising, and "a little bump" around Vanarsdale's left eye and on the left side of his head. Both Falcon and Vanarsdale seemed "annoyed" and "kind of mad" during their brief interviews by Wrinkle. Following these interviews, Wrinkle contacted the Lincoln Police Department to report the assault.

Lincoln police officer Jefforey Schwartz responded to the jail to investigate a "belated assault," meaning "something that wasn't happening at the time, between two inmates." After viewing the incident video in Wrinkle's office, Schwartz made contact with Falcon and then Vanarsdale. Falcon declined to speak with Schwartz and turned and walked away when Schwartz attempted to take pictures to assess him for injuries. Schwartz did not observe any injuries on Falcon during their brief contact. Vanarsdale was sitting on the floor of his cell when Schwartz contacted him. Vanarsdale was wearing "a Covid style mask" on his face, which he removed at Schwartz's request. Schwartz observed "some minor redness, maybe some slight swelling and a bit of bruising" under Vanasdale's left eye. Schwartz took photographs of the injuries he observed on Vanarsdale's face; he also photographed Vanarsdale's hands but did not observe any injuries to them.

Following the testimony of Wrinkle and Schwartz, the State rested. The district court overruled Falcon's motion for directed verdict, after which Falcon waived his right to testify, and the defense also rested its case. During the jury instruction conference, Falcon did not object to any of the proposed instructions or the verdict form. He did not request a lesser included offense instruction for third degree assault, and the jury was not provided with any such instruction.

The jury unanimously found Falcon guilty of second degree assault, and the district court accepted the jury's verdict and found Falcon guilty.

On September 25, 2025, a sentencing hearing was held before the district court in this case and in another case involving Falcon's second degree assault conviction against a different victim. See *State v. Falcon*, No. A-23-824, 2024 WL 4675454 (Neb. App. Nov. 5, 2024) (selected for posting to court website) (involving incident occurring less than 2 months prior to current incident and under similar circumstances) (the other second degree assault case). In this case, the court sentenced Falcon to 5 to 10 years' imprisonment. The court did not give Falcon credit on this case because it awarded him 299 days' credit in the other second degree assault case. The court ordered his sentence in this case to be consecutive to the sentence in the other second degree assault case and consecutive to any other sentence he may be serving.

Falcon filed a self-represented notice of appeal and was appointed appellate counsel, but his appeal was dismissed because his appellate counsel did not file a timely brief. Falcon then moved for postconviction relief, alleging he received ineffective assistance of counsel due to his attorney's failure to perfect his direct appeal. The State stipulated that Falcon received ineffective assistance of appellate counsel, and the district court granted Falcon's request for relief in the form of a new direct appeal. This is that appeal.

## ASSIGNMENTS OF ERROR

Falcon assigns, reordered and restated, that (1) the district court erred by not instructing the jury on third degree assault as a lesser-included offense of second degree assault, (2) his trial

counsel was ineffective in failing to request such an instruction, (3) the evidence was insufficient to support his conviction, and (4) the court erred by imposing an excessive sentence.

## STANDARD OF REVIEW

Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law. *State v. Gonzalez*, 313 Neb. 520, 985 N.W.2d 22 (2023).

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Jury Instructions.*

Falcon assigns the district court erred by not instructing the jury on third degree assault as a lesser-included offense of second degree assault.

Although Falcon's attorney did not request a lesser-included offense instruction, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence, and it must, on its own motion, correctly instruct on the law. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023). A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022).

In this case, Falcon was charged with second degree assault under § 28-309(1)(c)(i). Section 28-309(1) provides that a person commits the offense of assault in the second degree if he or she:

(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument;

(b) Recklessly causes serious bodily injury to another person with a dangerous instrument; or

(c) Unlawfully strikes or wounds another (i) while legally confined in a jail or an adult correctional or penal institution, (ii) while otherwise in legal custody of the Department of Correctional Services, or (iii) while committed as a dangerous sex offender under the Sex Offender Commitment Act.

On the other hand, a person commits the offense of assault in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to another person; or threatens another in a menacing manner. Neb. Rev. Stat. § 28-310 (Reissue 2016). In contrast to second degree assault under subsection (1)(a) or (1)(b), third degree assault does not require the use of a dangerous instrument.

Falcon argues that a lesser-included offense instruction was required here because both § 28-309 and § 28-310 "require intentionally, knowingly, or recklessly causing bodily injury." Brief for appellant at 12. He notes that § 28-309(1)(a) and (b) require the use of a deadly instrument and that there was no evidence that a weapon was used in this case. Incorrectly citing facts from the other second degree assault case (where there was no evidence of any injury to the victim other than a headache a number of hours after the incident), Falcon argues that the facts fit better with third degree assault, noting that third degree assault does not require proof of strikes or wounds and can be proved by evidence of a threat.

Falcon also argued that the jury should have been instructed on third degree assault as a lesser-included offense of second degree assault in the other second degree assault case. See *State v. Falcon*, No. A-23-824, 2024 WL 4675454 (Neb. App. Nov. 5, 2024) (selected for posting to court website). In that case, Falcon was only charged under § 28-309(1)(c), which elements include the unlawful striking or wounding of another while legally confined in a jail or an adult correctional or penal institution. There, we noted that if the evidence supported the wounding of another under this statute, then third degree assault would arguably be a lesser-included offense in that intentionally or negligently causing bodily injury, or recklessly causing serious bodily injury could amount to wounding. However, because § 28-309(1)(c), under which Falcon was charged, also includes the additional element of confinement, and the evidence clearly showed that Falcon was confined at the time of the offense, there was no rational basis for acquitting him of the greater offense and finding him guilty of the lesser offense. We also noted that § 28-309(1)(c) alternatively prohibits striking another (does not require wounding) and in that event, the elements of the offense are not similar and are such that a lesser-included offense would not be warranted. We reviewed the evidence in the other second degree assault case, including Falcon's testimony that he and the victim had only been engaged in horseplay and that he did not threaten the victim. We noted that while the circumstantial evidence supported a finding that Falcon struck the victim in that case, there was no evidence to show that the victim was wounded or suffered any bodily injury, serious or otherwise. We concluded that Falcon's testimony and theory of the case did not support instructing the jury on the lesser-included offense of third degree assault. Accordingly, we found that the district court did not err in failing to instruct the jury on the lesser-included offense of third

degree assault. Falcon filed a petition for further review, which was denied by the Nebraska Supreme Court.

Here, as in the other second degree assault case, Falcon was only charged under § 28-309(1)(c)(i), and the evidence clearly showed Falcon was confined in the Lancaster County jail at the time of the offense in this case. The surveillance video and photographs of Vanarsdale admitted into evidence together with the testimony of Wrinkle and Schwartz supports a conclusion that Falcon both struck and wounded Vanarsdale. Based on the evidence presented at trial, there was no rational basis to acquit Falcon of second degree assault and find him guilty of third degree assault. Accordingly, the district court did not err, in this case, in failing to instruct the jury on the lesser-included offense of third degree assault. This assignment of error fails.

*Ineffective Assistance.*

Falcon assigns that his trial counsel was ineffective in failing to request a jury instruction on third degree assault as a lesser-included offense of second degree assault.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). To show deficient performance under the test described in *Strickland v. Washington*, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Corral, supra*. To show prejudice under the "prejudice" component of the test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. See *id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Corral, supra*. The determining factor is whether the record is sufficient to adequately review the issue. *Id.* The record on appeal is sufficient to effectively review the question of ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

We concluded above that the evidence in this case did not support an instruction on third degree assault. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). Because the evidence did not support an instruction on third degree assault, trial counsel cannot be deficient for failing to request the instruction.

*Sufficiency of Evidence.*

Falcon assigns that the district court erred by "finding sufficient evidence to form a factual basis as said finding is solely based on conjecture." Brief for appellant at 6. Falcon argues that

§ 28-309 requires the evidence to show that someone struck or was struck at least twice given that "the language is plural," and that if "striking" cannot be shown, the State must show evidence of "wounds." Brief for appellant at 14. Again referring to the facts of the other second degree assault case, Falcon argues that the evidence does not show either striking or wounding. As does the State, we interpret Falcon's assignment of error and argument as challenging the sufficiency of the evidence for his conviction of second degree assault against Vanarsdale.

Falcon was charged in this case with second degree assault under § 28-309(1)(c)(i), which a person commits if he or she unlawfully strikes or wounds another while legally confined in a jail or an adult correctional or penal institution. There is no dispute that both Falcon and Vanarsdale were legally confined in the Lancaster County Jail at the time of the incident. The surveillance video shows the altercation through the window of Falcon's cell and shows Falcon repeatedly swinging his arms at Vanarsdale and appearing to make physical contact. The following day, Wrinkle and Schwartz observed redness, swelling, and a bit of bruising under Vanarsdale's eye and on the side of his face, but no injuries to his hands. The injuries to Vanarsdale's face were reflected in the photographs admitted into evidence. Neither Wrinkle nor Schwartz observed any visible injuries to Falcon.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could find that Falcon either unlawfully struck or wounded Vanarsdale and there was no question that Falcon was legally confined in a jail or adult correctional institution at the time of the altercation. The district court did not err in accepting the jury's guilty verdict.

*Excessive Sentence.*

Falcon assigns that the district court erred by imposing an excessive sentence. He argues that the court failed to consider his age and "the facts of this case," again citing facts specific to the other second degree assault case. Brief for appellant at 17. Here, Falcon was convicted of one count of second degree assault, a Class IIA felony. § 28-309. A Class IIA felony is punishable by up to 20 years' imprisonment with no minimum. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). The court imposed a sentence of 5 to 10 years' imprisonment, which is within the statutory limits.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

A review of the record and presentence investigation report (PSR) shows that the district court considered the relevant factors and did not abuse its discretion in imposing sentence. Falcon was 30 years old at the time of the PSR. Falcon has a GED and has been unemployed since 2021; he has never held a full-time job for more than a year. He is single with one dependent. Falcon's

criminal history includes convictions for attempted robbery, first degree assault, and use of a weapon to commit a felony, and at the time of the PSR, he had pending charges for attempted enticement by electronic communication device for alleged sexual communications with a teenager, possession of a firearm by a prohibited person, and driving under the influence (first offense). Also, at the time of the PSR, Falcon's charge in the other second degree assault case was pending. See *State v. Falcon*, No. A-23-824, 2024 WL 4675454 (Neb. App. Nov. 5, 2024) (selected for posting to court website). On the Level of Service/Case Management Inventory, he scored in the very high risk to reoffend category. A review of the record from the sentencing hearing shows that the court considered the relevant factors. The court did not abuse its discretion in considering the relevant factors and did not impose an excessive sentence. Accordingly, we affirm Falcon's sentence following his conviction for second degree assault.

CONCLUSION

For the reasons set forth herein, we affirm Falcon's conviction and sentence.

AFFIRMED.